UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                             :

KATREEN LOMBARDO,             :

                          :

                 Plaintiff,    :          20-CV-10336 (VSB)

                          :

           -against-      :         **OPINION & ORDER**

                          :

CAMUTO GROUP LLC,          :

                          :

               Defendant.  :

                          :
---------------------------------------------------------X

<u>Appearances</u>:

Alexander Todd Coleman
Michael John Borrelli
Sharan Rachel Abraham
Borrelli & Associates, P.L.L.C.
Garden City, New York
*Counsel for Plaintiff*

Wayne A. Graver
Michael F. McKeon
Lavin, Cedrone, Graver, Boyd & DiSipio
Philadelphia, Pennsylvania
*Counsel for Defendant*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Plaintiff Katreen Lombardo brings this action asserting claims for (1) breach of contract,

(2) unlawful deduction of wages in violation of New York Labor Law ("NYLL") § 193, and

(3) retaliation in violation of NYLL § 215.  Before me is the motion for summary judgment filed

by Defendant Camuto Group LLC ("Camuto"), as well as Lombardo's cross-motion for partial

summary judgment.  Because I find that there is a genuine dispute of material fact concerning the

interpretation of Lombardo's employment contract, neither party is entitled to summary

judgment on the breach of contract or NYLL § 193 claims.  Because there is also a genuine

dispute of material fact with regard to certain of Lombardo's theories of retaliation, Lombardo's

retaliation claim survives summary judgment. Thus, for the reasons that follow, the summary

judgment motions of the parties are DENIED.

## I.    Background and Procedural History[1]

In September 2014, Lombardo started working as a fashion director at Camuto—a global

business involved in the design, development, and distribution of various fashion footwear and

accessories. (Pl. 56.1 ¶¶ 1–2, 5.)[2] As part of the hiring process, Lombardo signed an offer letter

on August 26, 2014. (Abraham Decl. Ex. 5 ("Offer Letter" or "Contract").)[3] The Offer Letter

contained the terms of Lombardo's employment, including her base salary, bonus eligibility, and

various other benefits. (*Id.*) As relevant here, the Offer Letter included two bonus provisions,

the terms of which are set forth below:

> **Guaranteed Bonus:** You shall be eligible for a Guaranteed Bonus of Thirty
> Thousand United States Dollars ($30,000.00) beginning with services rendered
> during the 2014 calendar year and payable by March 2015 of the following year.
> In order to receive the Bonus you must remain an employee of the Company in
> good standing through the calendar year period upon which the Bonus is based and
> on the day which the Bonus is scheduled to be paid of the following year.

> **Future Discretionary Bonus:** You shall be eligible for an annual discretionary
> Bonus based on your individual goals and profitability, beginning with services
> rendered during the 2015 calendar year and payable by March 2016 . . . In order to
> receive any annual bonus, if awarded to you in any given year, you must remain an
> employee of the Company in good standing through the fiscal calendar year period
> upon which the bonus is based and on the day which the bonus is scheduled to be
> paid

(*Id.*)

---

[1] The following factual summary is drawn from the parties' Rule 56.1 submissions and summary judgment exhibits.
These facts are undisputed unless otherwise noted, either explicitly or by attributing the fact to one party. I recount
here only the information necessary for my decision on the pending motions.

[2] "Pl. 56.1" refers to Lombardo's Rule 56.1 statement, filed on November 18, 2022. (Doc. 81.)

[3] "Abraham Decl." refers to Sharan R. Abraham's declaration, filed on December 5, 2022. (Doc. 86.)

While working at Camuto, Lombardo received three bonuses—$30,000 in 2015, $30,000 in 2016, and $22,145 in 2017.[4]  (Pl. 56.1 ¶¶ 17–24).  Two years after she received her last bonus, Lombardo told Simon Nankervis, then-acting President of Camuto, that she believed her Contract guaranteed her an annual bonus of $30,000.  (Pl. 56.1 ¶¶ 25–30; Camuto 56.1 ¶ 17.)[5] Nankervis testified that after consulting with Camuto's human resources department and in-house counsel, he informed Lombardo that her Contract did not guarantee her an annual bonus. (Pl. 56.1 Counterstatement ¶ 18.)

In the months that followed, Lombardo experienced several changes to the conditions of her employment.  According to Lombardo, after she complained about her bonus, several of her job duties were reassigned to less qualified employees, (*id.* ¶ 30), she was excluded from meetings that she had previously regularly attended, (*id.* ¶ 44), her invitation to a company leadership conference was rescinded, (*id.* ¶ 50), and she was passed over for a promotion, (*id.* ¶ 33).  In March 2020, Lombardo, along with other Camuto employees, was furloughed due to the COVID-19 pandemic.  (Camuto 56.1 ¶ 22.)  Four months later, counsel for Lombardo sent a letter to Nankervis asserting that Camuto had breached the Contract and unlawfully withheld Lombardo's wages in violation of NYLL.  (*See generally* Counsel Letter.)[6]  The letter also stated that Camuto had retaliated against Lombardo for complaining about the bonus issue.  (*Id.*)  Less than two weeks later, Lombardo was "fired."[7]  (Pl. 56.1 Counterstatement ¶ 55).

---

[4] Camuto contends that Lombardo also received a fourth bonus of $4,592.02 in March 2020.  (Doc. 91 ("Pl. 56.1 Counterstatement") ¶ 15.)  However, Lombardo insists that this payment was "compensation for federal income tax liability she would incur as a result of the company's error in calculating its contribution to her 401(k) plan."  (*Id.* ¶ 16.)  Either way, this factual dispute is "irrelevant" for purposes of deciding the motions for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] "Camuto 56.1" refers to Defendant's 56.1 Statement, filed on November 14, 2022.  (Doc. 77.)

[6] "Counsel Letter" refers to Exhibit 24 of the Abraham Declaration, filed on December 5, 2022.  (Doc. 89.)

[7] Defendant disputes that it fired Plaintiff, asserting that Plaintiff "[a]long with roughly 75% of Defendant's staff . . . had been furloughed in response to the economic downturn resulting from the pandemic.  When that effect began to dissipate, Defendant asked a group of those furloughed employees, all necessary to its operation, to return to work.

Lombardo filed suit against Camuto on December 8, 2020.  (Doc. 1.)  On January 29, 2021, Camuto filed its answer.  (Doc. 12.)  At the close of discovery, Camuto moved for summary judgment on all of Lombardo's claims.  (Doc. 75.)  Four days later, Lombardo moved for partial summary judgment on her claims for breach of contract and violation of NYLL § 193. (Doc. 79.)  On December 5, 2022, the parties filed their respective opposition papers.  (Docs. 84, 92.)  One week later, the parties filed their replies.  (Docs. 94, 95.)

## II.    <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id*.

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id*. at 256 (internal quotation marks omitted), and to present such evidence that would allow a reasonable jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  To defeat a summary judgment motion, the nonmoving party "must do more than simply

---

Plaintiff was not among the group necessary to Defendant's continued operation, so she was not asked to return." (Doc. 93 at 9.)

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

"[T]he evidence considered on summary judgment must generally be admissible evidence." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(4) ("[D]eclaration used to support or oppose a motion [for summary judgment] must . . . set out facts that would be admissible in evidence."). A district court on summary judgment "has wide discretion in determining which evidence is admissible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005) (internal quotation marks omitted). Finally, the court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"Where, as here, there are cross-motions for summary judgment, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (internal quotation marks omitted).

## III.  Discussion

### A. *Breach of Contract and Violation of New York Labor Law Section 193*

The parties agree that Lombardo's first two claims—(1) breach of contract, and (2) violation of NYLL § 193—turn on the interpretation of the Contract's terms. Specifically, the issue is whether the Guaranteed Bonus was an annual guaranteed award or a one-time payment. Lombardo argues that she was entitled to an annual bonus of $30,000, so long as she remained employed with Camuto on the date that the bonus was scheduled to be paid. In response, Camuto contends that the Guaranteed Bonus was to be paid only once—in March 2015.

In interpreting a contract, courts "give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). "Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Id.* "The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the Court." *Id.* at 158. Ambiguity is "defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).

To give effect to the intent of the parties, a court must interpret a contract by considering "all of its provisions" and by giving the "words and phrases . . . their plain meaning." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks omitted). "A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins.*, No. 09-CV-1796, 2012 WL 3890128, at *5 (S.D.N.Y. Sept. 7, 2012) (internal quotation marks omitted).

With these principles in mind, I start with the text of the Contract. The Guaranteed Bonus provision states that Lombardo is "eligible for a Guaranteed Bonus of Thirty Thousand United States Dollars ($30,000.00) beginning with services rendered during the 2014 calendar year and payable by March 2015 of the following year." (Offer Letter.) To receive the bonus, Lombardo had to "remain an employee of the Company in good standing through the calendar year period upon which the Bonus is based and on the day which the Bonus is scheduled to be paid of the following year." (*Id.*)

The next paragraph of the Contract provides for a Future Discretionary Bonus, establishing that Lombardo is "eligible for an *annual* discretionary Bonus . . . beginning with services rendered during the 2015 calendar year and payable by March 2016." (*Id.* (emphasis added).) To receive "any *annual* bonus, if awarded . . . in any given year, [Lombardo had to] remain an employee of the Company in good standing through the fiscal year period upon which the bonus is based and on the day which the bonus is scheduled to be paid." (*Id.* (emphasis added).)

Although the parties to the Contract opted to say that the Future Discretionary Bonus was to be paid annually, they did not to say the same for the Guaranteed Bonus.  Because drafters of contracts "must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so," *Int'l Fid. Ins. v. Cnty. of Rockland*, 98 F. Supp. 2d 400, 412 (S.D.N.Y. 2000), that difference in language indicates a difference in meaning.  *RSL Commc'ns, PLC v. Bildirici*, No. 04-CV-5217, 2010 WL 846551, at *4 (S.D.N.Y. Mar. 5, 2010) ("The Court must presume that the contracting parties consistently drew the distinction between" two terms "for a reason.").  This presumption is strengthened by the fact that the term for Guaranteed Bonus is followed immediately by the term for the Future Discretionary Bonus, making the contrast between the two provisions evident.

On the other hand, Lombardo points out that the first sentence of the Guaranteed Bonus provision states that she would be entitled to a bonus "*beginning with* services rendered during the 2014 calendar year."  (Offer Letter (emphasis added).)  Lombardo argues that this phrasing demonstrates that she was entitled to a Guaranteed Bonus not only for the work performed in 2014, but also for the work performed every year thereafter.  Indeed, "beginning" typically means "to commence" or "to start," *see* Oxford English Dictionary (3d ed. 2024), https://www.oed.com/ (last visited January 6, 2025), requiring some limitation to indicate a finite term.  The Guaranteed Bonus seems to provide that limitation, as the very next clause states that the bonus would be "payable by March 2015 of the following year."  (Offer Letter.)  However, the Guaranteed Bonus and the Future Discretionary Bonus contain parallel phrasing with respect to timing, each stating that Lombardo would be eligible for her bonus "beginning with" a certain year and "payable by" March of the following year.  (*Id.*)  The parties agree that the Future Discretionary Bonus is annual.  Hence, the same language being used to describe the timing of

both bonuses indicates that the drafters of the contract did not intend the "payable by" term to act as a limitation on the "beginning with" term that would defeat a reading of that contract term as providing for annual payment. *See Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 351 (S.D.N.Y. 2013) ("When considering the meaning of a contract term in the larger context of an entire agreement, a Court may presume that the same words used in different parts of a writing have the same meaning." (internal quotation marks omitted)).  Furthermore, the Guaranteed Bonus provides that "[i]n order to receive the Bonus" Lombardo had to be "an employee of the Company in good standing through the calendar year period upon which the Bonus is based and on the day which the Bonus is scheduled to be paid of the following year."  (Offer Letter.)  The generality of this sentence, which utilizes terms like "calendar year period" and "following year" instead of inputting the year that Lombardo was hired, could be read to support Lombardo's open-ended interpretation of the "beginning with" language in the Guaranteed Bonus.

Although reasonable minds can differ on how to read these provisions, Lombardo's arguments are sufficient to create some doubt as to the plain meaning of the Contract.  Where there is doubt as to plain meaning, I may consider relevant extrinsic evidence. *See St. Barnabas Hosp. v. Amisys, LLC*, No. 04-CV-2778, 2007 WL 747805, at *4 (S.D.N.Y. Mar. 9, 2007) (citing *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 528 (2d Cir. 1990)).  Plaintiff points out that Defendant sent an offer letter to another employee, Sarah Rosen, over two years prior to her own offer letter.  (Doc. 82 at 10.)  Rosen's offer letter describes her "Guaranteed Bonus" in different terms than Lombardo's offer letter, including by setting an exact payment date for Rosen's bonus instead of indicating payment in the "following year" for an unspecified "calendar year period," and stating that Rosen's Guaranteed Bonus was "for the first year" instead of "beginning with" the first year.  (*Id.*)  Lombardo argues that these differences show

that Defendant knew how to draft a bonus provision unambiguously guaranteeing payment for only one year, and yet chose not to do so in her case.  (*Id.*)

In response, Defendants argue that another employee's contract is irrelevant.  Defendants instead point to an email chain between Defendant's Vice President of Human Resources and then-President, establishing that Lombardo's offer should be for "Base $200K; Guaranteed Bonus of $30K – Payout in March 2015; Future Discretionary Bonus of 25% - for March 2016 and beyond," as evidence of intent.  (Lombardo Opp'n at 4[8]; *see also* Doc. 80 Ex. 7.)  Defendants also note that in March 2017, a company vice president informed Lombardo by email that she would receive a bonus of just over $22,000, adding that the company had achieved 80% of its goal.  (Lombardo Opp'n at 4.)   Lombardo responded "Wow. Thank you so much!!! I love my job."  (Doc. 80 Ex. 15.)  If Lombardo's interpretation of the contract was correct, she would have been entitled to a bonus about $8,000 higher, and it would not have been tied to the company's performance.  Defendant argues that this shows that she did not believe she was so entitled.  (Lombardo Opp'n at 4.)

The extrinsic evidence raised by the parties is not "so one-sided that no reasonable person could decide to the contrary" of either side's interpretation.  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 115 (2d Cir. 2010) (internal quotation marks omitted).  Regarding Rosen's contract, one contract drafted and entered into by Defendant over two years before the contract at issue is indicative of intent, but not dispositive.  The email between Camuto executives laying out the terms of Lombardo's offer "deals primarily with the intent of [Defendant] rather than the joint intent of the parties," *Sayers v. Rochester Tel. Corp.*

---

[8] "Lombardo Opp'n" refers to Lombardo's brief in opposition to Camuto's motion for summary judgment, filed on December 5, 2022.  (Doc. 84.)

*Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1096 (2d Cir. 1993), and as Plaintiff points out in reply, (Doc. 95 at 5–6), there is no evidence that this email exchange or the intent reflected therein was ever communicated to Plaintiff.  Thus, this email thread, while it may be relevant to understanding the context of the parties' negotiations, is not dispositive without more evidence or information.  *See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 125 (2d Cir. 2006) ("[A] party's uncommunicated subjective intent cannot supply the ultimate meaning of an ambiguous contract . . . .").  Lastly, Lombardo's response to hearing about her 2017 bonus could indicate that she did not think she was entitled to anything additional, but it could also indicate a desire to remain in good standing at work, or a belief that she was being paid her discretionary bonus and there was still a guaranteed bonus to come.

Where there is ambiguity, the contract's interpretation is an issue of fact.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 257 (2d Cir. 2002); *Sarinsky's Garage Inc. v. Erie Ins. Co.*, 691 F. Supp. 2d 483, 485 (S.D.N.Y. 2010).  Therefore, neither party is entitled to summary judgment on the breach of contract or NYLL § 193 claims.

### B. *Retaliation Under New York Labor Law*

Under NYLL, an employer may not retaliate against "any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the NYLL]."  N.Y. Lab. Law § 215.  Claims of retaliation brought pursuant to NYLL are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wilson v. N.Y. & Presbyterian Hosp.*, No. 21-CV-1971, 2022 WL 17587564, at *1 (2d Cir. Dec. 13, 2022) (summary order) (applying *McDonnell Douglas* framework to retaliation claims under NYLL).

To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she participated in a protected activity known to the defendant, (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Benzinger v. Lukoil Pan Ams., LLC*, 447 F. Supp. 3d 99, 130 (S.D.N.Y. 2020) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)). If the plaintiff can make out a prima facie case, the burden shifts to the employer to "articulate a 'legitimate, non-retaliatory reason for the employment action.'" *Id.* (quoting *Mullins*, 626 F.3d at 53) (alterations omitted). Where the employer carries that burden, the plaintiff must produce "'sufficient evidence to support a rational finding' that [the defendant's] proffered rationales 'were false, and that more likely than not discrimination was the real reason for the employment action.'" *Id.* (quoting *Mullins*, 626 F.3d at 53–54).

### 1. Protected Activity

With regard to the first element of the prima facie case, Lombardo has identified two potential protected activities. Specifically, she contends that each time she complained to Nankervis about her bonus she complained about a "colorable violation" of NYLL § 193, *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 471 (S.D.N.Y. 2021) (internal quotation marks omitted), which prohibits employers from withholding nondiscretionary bonuses from employees' wages, *see Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y.3d 1, 16 (2012) (holding that an employer's failure to pay a "guaranteed" and "nondiscretionary" bonus, which "had been earned and was vested before [the plaintiff] left his job," violated NYLL § 193). NYLL's anti-retaliation provision protects "informal complaints" made to an employer. *Hallett v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 311 (S.D.N.Y. 2020). The reporting employee "need not state his complaints with lawyerly precision," *Cortese*, 544 F. Supp. 3d at 471, or "specify the

[NYLL] provision that the employer allegedly violated," *Hallett*, 481 F. Supp. 3d at 311. Instead, the complaint must only be "be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Greathouse v. JHS Sec., Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (internal quotation marks omitted). That standard is met here.

The undisputed evidence in the record demonstrates that Lombardo twice complained to Nankervis about Camuto's failure to pay her bonus—once in July 2019 and once in July 2020. (Pl. 56.1 ¶¶ 25–30; Counsel Letter.) With respect to the first complaint, Lombardo testified that she had a conversation with Nankervis in July 2019 about Camuto's failure to pay her the Guaranteed Bonus. (Lombardo Dep. at 64.)[9] Similarly, Nankervis testified that Lombardo gave him a copy of the Contract and asked that Camuto "honor the [Guaranteed] [B]onus." (Nankervis Dep. at 22.)[10] As to the 2020 complaint, Lombardo's counsel sent a letter to Nankervis, contending that "Camuto failed to pay her all owed wages guaranteed in her employment agreement," in violation of NYLL. (Counsel Letter at 1.) These complaints were "sufficiently clear and detailed" to put Camuto on notice of Lombardo's assertion of rights protected by the NYLL. *Greathouse*, 784 F.3d at 117.

### 2. Adverse Employment Action and Causation

Turning to the second element of the prima facie case, Lombardo must show an adverse employment action, i.e., an action that "well might have dissuaded a reasonable worker from making or supporting a charge of" NYLL violations. *Burlington N. & Santa Fe Ry. Co. v. White*,

---

[9] "Lombardo Dep" refers to the deposition transcript of Katreen Lombardo, filed on December 5, 2022. (Abraham Decl. Ex 1.)

[10] "Nankervis Dep." refers to the deposition transcript of Simon Nankervis, filed on December 5, 2022. (Abraham Decl. Ex. 10.)

548 U.S. 53, 68 (2006) (internal quotation marks omitted).  While many cases involving retaliation under NYLL are premised on the termination of an employee's employment or discharge, employment actions less severe than outright termination may nonetheless serve as the basis for a valid claim.  Among other things, adverse employment actions include "refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."  *See Shaw v. Baldowski*, 747 N.Y.S.2d 136, 144 (Sup. Ct. 2002) (quoting *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002)).

To determine if an incident qualifies as an adverse employment action, courts use an objective standard to consider whether, under the totality of the circumstances, the conditions of the plaintiff's employment have "changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace."  *Id.* (quoting *Phillips*, 278 F.3d at 109); *see also Castagna v. Luceno*, No. 09-CV-9332, 2011 WL 1584593, at *13 (S.D.N.Y. Apr. 26, 2011) (employing the same standard), *aff'd*, 744 F.3d 254 (2d Cir. 2014), *and aff'd*, 558 F. App'x 19 (2d Cir. 2014).  Consequently, actions that "'are relatively minor and infrequent will not meet [the NYLL] standard, but otherwise minor incidents that occur often and over a long period of time may be actionable if they attain the critical mass of unreasonable inferiority.'"  *Shaw*, 747 N.Y.S.2d at 144 (quoting *Phillips*, 278 F.3d at 109).

With respect to the third element, "a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."  *Gorman–Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks omitted).  Because there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," the Court can "exercise its

judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (internal quotation marks omitted). To establish causation, the plaintiff must also show that the particular decisionmaker who took the adverse action against the plaintiff had knowledge of the plaintiff's protected activity. *See EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 859 (S.D.N.Y. 2013) (explaining that "the lack of evidence indicating knowledge of particular individual agents can doom a plaintiff's ability to show . . . causation").

Here, Lombardo cites several acts of purported retaliation, including "reassigning several of her job duties to less qualified employees, leaving her out of meetings that she previously regularly attended, excluding her from a company leadership conference that employees with positions lateral to [her] attended, denying her a promotion in favor of a less qualified employee who did not complain about her bonus, not giving her any bonus the following year, and ultimately terminating her employment." (Lombardo Opp'n at 1.) I address each one of the purported adverse employment actions in turn.[11]

### a. Reassignment of Job Responsibilities

With regard to Lombardo's assertion that several of her job duties were reassigned to less qualified employees, Lombardo testified that "the assignment of creating [photographic] assets for a particular brand" was given to Michael Sterk, who "had very little experience." (Lombardo Dep. at 79–80.) However, Lombardo could not recall key details regarding this theory of

---

[11] Because Lombardo's brief in opposition to Camuto's motion for summary judgment includes no argument with respect to the theory that Camuto retaliated against her by withholding her bonus, I deem this theory abandoned. *See Carone v. Mascolo*, 573 F. Supp. 2d 575, 591 (D. Conn. 2008) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))); *see also Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (dismissing breach of contractual duty of good faith claim as abandoned because plaintiff's summary judgment opposition papers made no argument in support of the claim at all).

retaliation, including what specific photographic assets were reassigned or how many reassignments were made.  (*Id.*)  Accordingly, her testimony "is too vague to forestall summary judgment."  *Robinson v. De Niro*, No. 19-CV-09156, 2023 WL 4862772, at *43 (S.D.N.Y. May 25, 2023); *see also BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) ("The party opposing the motion for summary judgment must set forth concrete particulars." (internal quotation marks and alterations omitted)).  Furthermore, Lombardo failed to offer any evidence demonstrating who reassigned her job duties.  Absent such evidence, Lombardo cannot establish causation—i.e., that the person who reassigned her work knew of her complaints.  *See Fox v. Starbucks Corp.*, No. 19-CV-4650, 2021 WL 4155029, at *6 (S.D.N.Y. Sept. 13, 2021) ("A plaintiff 'cannot rely on general corporate knowledge alone to satisfy the third 'causal connection' prong' of his retaliation claim." (quoting *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 34 (E.D.N.Y. 2015)), *aff'd*, No. 21-2531, 2023 WL 407493 (2d Cir. Jan. 26, 2023) (summary order).  For these reasons, Lombardo has failed to establish a prima facie case of retaliation on this theory.

However, even assuming that Lombardo had made out a prima facie case of retaliation, this theory of retaliation would still fail.  Critically, Lombardo has not offered any evidence demonstrating that Camuto's non-retaliatory reason for reassigning photographic assets to Michael Sterk—namely, that the reassignment was done at the request of a client—was pretextual.  (Del Cielo Dep. at 124–25.)[12]  Accordingly, this theory of retaliation cannot survive summary judgment.

---

[12] "Del Cielo Dep." refers to the deposition transcript of Alex Del Cielo, filed December 5, 2022.  (Doc. 86 Ex. 8.)

b.  Exclusion from Meetings

Lombardo next alleges that, after she complained about her bonus, she was "left out of marketing strategy meetings" that she had regularly attended.[13]  (Lombardo Opp'n at 20.) However, Lombardo's "vague and otherwise unsubstantiated statements about the meetings are insufficient to establish that she suffered a materially adverse change in the conditions of her employment."  *See Rodriguez v. Nassau Cnty.*, No. 16-CV-648, 2019 WL 4674766, at *14 (E.D.N.Y. Sept. 25, 2019) (rejecting claim that exclusion from meetings constituted adverse employment action in Title VII retaliation case), *aff'd sub nom. Rodriguez v. Cnty. of Nassau*, 830 F. App'x 335 (2d Cir. 2020); *Chan v. NYU Downtown Hosp.*, No. 03-CV-3003, 2006 WL 345853, at *8–9 (S.D.N.Y. Feb. 14, 2006) (same); *Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 385–86 (S.D.N.Y. 2002) (same), *aff'd*, 75 F. App'x 846 (2d Cir. 2003).

Moreover, Lombardo's testimony on this issue is so vague as to be inadmissible.  During her deposition, Lombardo testified that she lacked "specific knowledge that such meetings occurred without [her]."  (Lombardo Dep. at 95.)  Lombardo could not, for example, remember the "dates and times" of the meetings or the people in attendance.  (*Id.*)  Indeed, she could not recall the details of even one meeting from which she was purportedly excluded.  (*Id.* at 94–98.) Given Lombardo's lack of personal knowledge, her testimony would likely be inadmissible at trial.  *See Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004) ("It is one of the most basic requirements of the law of evidence that a witness's report may be admitted only where grounds

---

[13] Lombardo also testified that she was made to feel "uncomfortable" at meetings.  (Lombardo Dep. at 93.) However, because this testimony is not supported by any detail, it is not sufficient to survive summary judgment. *See Germany v. New York State Dep't of Corr. Servs.*, No. 03-CV-148, 2005 WL 2036027, at *16 (S.D.N.Y. Aug. 17, 2005) ("Although the burden that a plaintiff must meet at the prima facie stage is de minimis, the plaintiff must at least proffer competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer discriminatory retaliation."); *see also Castagna*, 2011 WL 1584593, at *13 (holding that "occasional ridiculing and name-calling" does not rise to the level of adverse employment action); *Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 478 (W.D.N.Y. 2005) ("Menacing looks, name calling, or being shunned by co-workers does not constitute an adverse employment action.").

exist for 'a finding that the witness has personal knowledge of the matter' to which the statement relates." (quoting Fed. R. Evid. 602)).  For these reasons, this theory of retaliation cannot survive summary judgment.

### c.  Leadership Conference

I next consider Lombardo's contention that her invitation to attend Camuto's leadership conference was rescinded after she complained about her bonus.  Even assuming that Lombardo's exclusion from the leadership conference constitutes a material adverse change in the conditions of her employment—and I am skeptical that it does—Lombardo has nonetheless failed to demonstrate a causal connection between the recission of her invitation and her complaints about the Guaranteed Bonus.  During her deposition, Lombardo testified that her supervisor, Sarah Rosen, told her that she "needn't worry about" attending the conference. (Lombardo Dep. at 105.)  There is nothing in the record, however, demonstrating that Rosen was aware that Lombardo had complained to Nankervis about her bonus, and, without such evidence, Lombardo cannot establish causation.  *See Fox*, 2021 WL 4155029, at *6.  In addition, Lombardo failed to rebut Nankervis's non-retaliatory reason for withdrawing her invitation to the conference.  According to Nankervis, a "hold the date" was sent "to anyone that was a director level and above[, but] then when the conference budget was finally locked down," there were only a "limited number of participants" who could attend.  (Nankervis Dep. at 35–36.) Accordingly, this theory of retaliation cannot survive summary judgment.

### d.  Failure to Promote

I next consider Lombardo's assertion that Camuto passed over her for a promotion and instead tapped Sarah Rosen to be Vice President of Marketing as retaliation for her complaining about her bonus.  At the outset, this theory of retaliation clearly qualifies as an adverse

18

employment action.  *See Shaw*, 747 N.Y.S.2d at 144 (listing examples of adverse employment

actions as hiring, firing, and failing to promote, among other things).  In his deposition, however,

Nankervis offered a legitimate reason for promoting Rosen instead of Lombardo—namely, that

she "had the relevant attributes that [he] was looking for in a VP of Marketing," including

"[s]trategic thinking" skills and the "ability to communicate clearly."  (Nankervis Dep. at 26.)

Unlike Lombardo, Rosen was "was on the strategic and the PR side of the business," a role that

Nankervis believed made her the "best fit" for the promotion.  (*Id.* at 26, 29.)

　　　　To combat this legitimate, non-retaliatory reason for promoting Rosen, Lombardo cites to

the fact that she "managed a substantially larger department than Rosen, had greater employee

retention, and a budget that was four or five times the size of Rosen's."  (Lombardo Opp'n at 7

(internal quotation marks omitted)).  Lombardo also insists that she "had more industry

experience than Rosen and had a greater impact in generating sales for [Camuto] than Rosen."

(*Id.*)  At the summary judgment stage, to demonstrate pretext on the basis of discrepancy in

qualifications alone, "the plaintiff's credentials would have to be so superior to the credentials of

the person selected for the job that no reasonable person, in the exercise of impartial judgment,

could have chosen the candidate selected over the plaintiff for the job in question."  *Byrnie v.*

*Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks

omitted), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e).  Lombardo's credentials

are not so superior to Rosen's that Nankervis's reason for promoting Rosen must be pretextual.

Indeed, Lombardo's accomplishments demonstrate "a very different skill set" from what

Nankervis identified as determinative of his decision to promote Rosen to Vice President of

Marketing.  (Nankervis Dep. at 63.)  The Vice President role involved "go[ing] through the

marketing plan, present[ing] a marketing direction, [and] present[ing] all of the various

components to that plan." (Nankervis Dep. at 63.) Nankervis testified that Lombardo was a "very strong creative director," but Rosen brought more to the table when it came to "the strategic marketing role," which was at the core of the Vice President of Marketing's duties. (Nankervis Dep. at 62–63.) Because Lombardo has failed to show evidence of pretext, summary judgment must be granted as to this theory.

### e. Failure to Rehire

Lombardo's contention that Camuto failed to rehire her after she was furloughed likewise qualifies as an adverse employment action under NYLL. *See Shaw*, 747 N.Y.S.2d at 144. With respect to causation, counsel for Lombardo wrote a letter to Nankervis in July 2020 raising the issue of Camuto's failure to pay her the Guaranteed Bonus. Less than a month later, Lombardo was let go. (Pl. 56.1 Counterstatement ¶ 55.) Although the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos*, 252 F.3d at 554, the passage of one month is sufficient to allow for an inference of causation, *see Feliciano v. City of New York*, No. 14-CV-6751, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (collecting cases requiring, for a retaliatory inference to arise, adverse activity to occur within approximately two months of the plaintiff's protected activity).

Camuto counters that Lombardo "was not asked to return from furlough because in the post-pandemic world her specialty, off-site photoshoots, were no longer being done, for economic reasons." (Camuto Reply at 4.)[14] Indeed, Nankervis testified that in the wake of the COVID-19 pandemic, Camuto was no longer doing "those things that [Lombardo] had

---

[14] "Camuto Reply" refers to Camuto's reply brief in support of summary judgment, filed on December 12, 2022. (Doc. 94.)

predominately done." (Nankervis Dep. at 56.)  In response, Lombardo submitted an affidavit in which she averred that she "was the only member of [her] department that was permanently fired" and that her "whole department does the same type of work."[15]  (Doc. 90 ¶ 5.)  Taken together, Lombardo's sworn statements that Camuto rehired everyone in the department except her, even though they all did the same type of work, gives rise to an inference of retaliation. There is thus a genuine dispute of material fact regarding whether Lombardo was, in fact, fired because her services were no longer needed.  As such, summary judgment must be denied as to this theory.

## IV.    **Conclusion**

Accordingly, Lombardo's motion for partial summary judgment is DENIED.  Camuto's motion for summary judgment is DENIED in part.  The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 75 and 79.

SO ORDERED.

Dated: January 15, 2025
       New York, New York

_____
Vernon S. Broderick
United States District Judge

---

[15] Courts in this Circuit have recognized that "a material issue of fact may be revealed by subsequent sworn testimony that amplifies or explains, but does not merely contradict, prior testimony, especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation." *F.D.I.C. v. Wrapwell Corp.*, No. 93-CV-859, 2002 WL 14365, at *15 (S.D.N.Y. Jan. 3, 2002) (quoting *Rule v. Brine*, 85 F.3d 1002, 1011 (2d Cir. 1996) (emphasis omitted)).  Because Lombardo was not asked about this theory of retaliation during her deposition, I consider Lombardo's affidavit.